**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| BRIT UW, LIMITED, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 16-0523 (RC) |
| | : | | |
| v. | : | Re Document No.: | 7 |
| | : | | |
| MANHATTAN BEACHWEAR, LLC, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**GRANTING DEFENDANT'S MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiff Brit UW, Limited (Brit) seeks declaratory relief to establish that it need not pay

Defendant Manhattan Beachwear, LLC (MBW) under a professional liability insurance policy

that Brit provided. MBW's involvement in this controversy began when it retained Clyde

Hettrick, a partner at Dickstein Shapiro LLP (Dickstein), to represent it in an insurance matter.

During the representation, Mr. Hettrick left Dickstein to form his own firm, and took MBW with

him as a client. MBW later came to regret this decision, to the extent that it fired Mr. Hettrick

and sued him (and his new firm) for malpractice. Brit—one of several insurers on Dickstein's

professional liability policy—declined coverage of the malpractice suit.

MBW, through a variety of legal machinations, both received a judgment for

$63,888,486.49 against the defendants in the malpractice action, and obtained assignment of the

defendants' claims against Dickstein's insurers, including Brit. Noting that MBW was poised to

sue it for millions, Brit filed this action seeking, *inter alia*, a declaration of non-coverage over

the malpractice claims. Now before the Court is MBW's motion to dismiss this action for lack of

personal jurisdiction, lack of subject matter jurisdiction, failure to join a party, lack of venue, and

forum non conveniens. The Court concludes that it does not have personal jurisdiction over

MBW under either specific or general jurisdiction, and thus dismisses the action in its entirety

without reaching the other issues.

## II.  BACKGROUND[1]

This case involves an insurance dispute between plaintiff Brit, an insurer, and defendant

MBW,[2] an erstwhile[3] swimwear manufacturer. Brit was one of several insurers that issued a

professional liability insurance policy to Dickstein, and MBW was one of Dickstein's clients.

The origins of this case began to germinate in 2007, when MBW claimed that it lost

$11,459,421 due to a fire and theft in Indonesia. Soura Decl. ¶ 8, ECF No. 7-1; Compl. ¶ 17, ECF

No. 1. MBW disagreed with its insurer's handling of the claim, and hired Clyde Hettrick—then a

partner at Dickstein in the Los Angeles office—to represent it in the Indonesia matter. Soura

---

[1] For the purposes of resolving this motion, the Court accepts the factual allegations of the plaintiff. *See Talenti v. Clinton*, 102 F.3d 573, 574 (D.C. Cir. 1996). The Court also considers the parties' affidavits and declarations. *See Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005).

[2] MBW is a limited liability company organized in Delaware. Soura Decl. ¶ 3, ECF No. 7-1. MBW's members include LLCs organized in Nevada with members residing in California and Florida. Soura Decl. ¶ 3. Its principal place of business appears to be in California. *See* Soura Decl. ¶ 4 (stating that MBW's principal place of business was California until 2010); Affidavit of Service, ECF No. 5 (stating that MBW's CEO was served in California).

[3] Up until 2010, MBW engaged in the manufacture and sale of women's swimwear. Soura Decl. ¶¶ 4, 7. Whether or not MBW continued to engage in such commercial activities after 2010 is a point of contention in this case. According to MBW, all manufacturing and related tasks were taken over by MBW Inc.—a different entity than the defendant here—in 2010, leaving MBW in existence only to pursue certain legal claims, including the Indonesia-based claim underlying this action. Soura Decl. ¶ 7. Brit believes that MBW may have remained involved with or responsible for manufacturing activities after 2010 and requests jurisdictional discovery. Pl.'s Mem. P. & A. Opp'n Def.'s Mot. Dismiss (Pl.'s Opp'n) at 42–43, ECF No. 13. As discussed *infra* Part III.C, the Court denies jurisdictional discovery and does not investigate MBW's corporate structure because, even if MBW continued to produce swimwear, this Court lacks personal jurisdiction.

Decl. ¶ 9. The retainer agreement was negotiated in California, mailed from California, and contained a California arbitration provision. Soura Decl. ¶ 9. Brit and several other London insurers provided professional liability insurance to Dickstein at the time.[4] Compl. ¶¶ 1,7; *see also* Primary Professional Liability Insurance Policy, ECF No. 1-1, Ex. A. After submitting a claim package on MBW's behalf in the Indonesia matter, Mr. Hettrick left Dickstein and started his own law firm, Compl. ¶ 18; Soura Decl. ¶ 10, retaining MBW as a client, Compl. ¶ 18; Soura Decl. ¶ 10.

Relations between Mr. Hettrick and MBW soon soured. In June of 2011, MBW replaced Mr. Hettrick with lawyers from Dickstein's Los Angeles office for the Indonesia matter, Soura Decl. ¶ 12, and in 2012 MBW sued Mr. Hettrick for malpractice in Los Angeles Superior Court, Compl. ¶ 28; *see also* Complaint for Legal Malpractice, *Manhattan Beachwear, LLC v. Hettrick Law, P.C.*, No. BC497520 (Cal. Super. Ct. Dec. 14, 2012), ECF No. 1-3, Ex. C. Dickstein's insurers, including Brit, were not named in the malpractice case. *See* Complaint for Legal Malpractice, *Manhattan Beachwear, LLC v. Hettrick Law, P.C.*, No. BC497520 (Cal. Super. Ct. Dec. 14, 2012). Brit declined to provide coverage in the malpractice suit. Compl. ¶ 31.

---

[4] Brit was the lead underwriter for Dickstein's professional liability insurance policy from 2003 through the 2012–2013 policy at issue in this case. Lowther Decl. ¶¶ 6, 12, ECF No. 13-2. Each year the D.C. office of Dickstein Shapiro negotiated and executed a new one-year professional liability insurance policy. Lowther Decl. ¶ 5. Negotiations typically took place by phone and email, and involved an in-person meeting in Brit's London office. Lowther Decl. ¶¶ 10, 11, 16, 17. The policies were delivered to the D.C. office by email. Gladdis Decl. ¶ 11, ECF No. 13-4. During the term of the insurance policies, Brit collaborated with the D.C. Dickstein office by phone and email, Lowther Decl. ¶¶ 20, 21, and attended occasional in-person meetings in D.C., *see* Lowther Decl. ¶¶ 24, 25 (describing approximately one in-person meeting every two years). The D.C. office paid the insurance premium, Lowther Decl. ¶ 13, and submitted all claims to Brit, Lowther Decl. ¶ 29, including the notification of the claims at issue in this case, Lowther Decl. ¶¶ 32, 33.

The malpractice case was ongoing when Mr. Hettrick died in 2013. Following his death, MBW took an unorthodox approach[5] to resolving the matter. First, MBW reached a settlement with Mr. Hettrick's estate and Hettrick's new law firm. *See generally* Settlement Agreement, ECF No. 1-4, Ex. D. Instead of disposing of the court case, however, the settlement provided that the case would proceed to a bench trial but the estate would not contest MBW's allegations on damages or culpability. Settlement Agreement ¶ 3 ("The ESTATE . . . agree[s] not to contest the nature or amount of any claims made by MB against the ESTATE. Liability and the extent of MB's damages against the ESTATE will be determined . . . in an uncontested prove-up hearing . . . . and shall be entered as a judgment against the ESTATE in the ACTION"). The estate further agreed to assign[6] any claims it might have against Brit (or Dickstein's other insurers) to MBW. Compl. ¶ 33; Soura Decl. ¶ 16; Settlement Agreement ¶ 4 ("[T]he ESTATE shall assign to MB . . . any and all assignable claims against [the professional liability insurers]"). In exchange for these concessions, MBW agreed not to collect on the judgment from Hettrick's estate. *See generally* Settlement Agreement.

A bench trial occurred pursuant to this agreement, and the court issued a judgment of $63,888,486.49 in MBW's favor. Compl. ¶ 34; Judgment After Court Trial, *Manhattan Beachwear, LLC v. Hettrick Law*, P.C., No. BC 497520 (Cal. Super. Ct., August 10, 2015), ECF No. 7-1, Ex. B. Although this judgment was entered against Hettrick's estate, the settlement

---

[5] Based on the unusual circumstances of this judgment, Brit variously alleges that it was "obtained through fraud and/or collusion" or suffered from other defects. *See, e.g.*, Compl. ¶ 35. These claims form part of Brit's claim for relief, but are not at issue in resolving this motion.

[6] The record here contains only an agreement between Hettrick's estate and MBW to so assign the claims: "[T]he ESTATE shall assign to MB and/or MB's designated assignee, in the form attached hereto as Exhibit A, any and all assignable claims against Lloyd's and any agents, representatives, related companies or other persons or entities against whom a claim may be brought . . ." Settlement Agreement, Stay and Covenant Not to Execute ¶ 4, ECF 1-4. Neither party, however, disputes that such an assignment in fact occurred.

agreement contemplated that MBW would bring suit against Brit and Dickstein's other insurers to enforce the judgment.[7] Settlement Agreement, ¶ 10, ECF No. 1-4, Ex. D ("Through the Assignment . . . MB . . . shall file an action against [Dickstein's insurers] . . . .").

Brit filed this suit seeking declaratory judgment to protect it against MBW's[8] claims.[9] MBW moves to dismiss the complaint for lack of personal jurisdiction, as per Federal Rule of Civil Procedure 12(b)(2). MBW further moves to dismiss for lack of subject matter jurisdiction, as per Rule 12(b)(1); improper venue, as per Rule 12(b)(3); failure to join a party, as per Rule 12(b)(7); and forum non conveniens. *See generally* Mem. P. & A. Supp. Def.'s Mot. Dismiss (Def.'s Mot. Dismiss), ECF No. 7.

## III.  ANALYSIS

The Court begins, and ends, its analysis by considering MBW's motion to dismiss for lack of personal jurisdiction. Because the Court agrees with MBW that MBW is not subject to either specific jurisdiction on this claim or general jurisdiction in the District, the Court will grant the motion and dismiss the complaint in its entirety.

---

[7] It appears from the record that Mr. Hettrick's new law firm was defended, under a reservation of rights, by its own insurer in the malpractice lawsuit. No claims by or relating to Mr. Hettrick's separate insurer are at issue here.

[8] According to MBW, it assigned its rights in the judgment and settlement to SFA Group, LLC (SFA), such that "SFA owns the right to pursue coverage under the Dickstein insurance program, including the coverage provided by Brit." Def.'s Mot. Dismiss at 10, ECF No. 7; *see also* Soura Decl. ¶ 18; Assignment of Rights and Acknowledgement of Assignment, ECF No. 7-1, Ex. C; Assignment of Judgment and Acknowledgement of Assignment, ECF No. 7-1, Ex. D. As discussed *infra* notes 17 and 20, the Court finds that it need not reach this issue to resolve the case.

[9] Since the initiation of this suit, in fact, SFA sued Brit and the other insurers in California Superior Court, arguing that they wrongfully refused coverage in the malpractice action. *See generally* Complaint, *SFA Group, LLC v. Certain Underwriters at Lloyd's*, No. BC 618980 (Cal. Super. Ct. May 2, 2016), ECF No. 7-2, Ex. A.

Personal jurisdiction requires that the court be able to exercise jurisdiction over a party under both "the applicable long-arm statute" and "the demands of due process." *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995); *accord GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). When a case, such as this one, Compl. ¶ 3, is brought in diversity, "the federal district court's personal jurisdiction over the defendant is coextensive with that of a District of Columbia court." *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004).

The plaintiff bears the burden of establishing that the court may properly exercise personal jurisdiction over each defendant. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). The Court will resolve factual discrepancies in favor of the plaintiff, *Crane*, 894 F.2d at 456, but "[b]are allegations and conclusory statements are insufficient." *Johns v. Newsmax Media, Inc.*, 887 F. Supp. 2d 90, 95 (D.D.C. 2012); *see also Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001). In addition to the pleadings, the Court may consider other evidence, such as affidavits. *See Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005).

Personal jurisdiction may be satisfied by either specific or general jurisdiction. *D'Onofrio v. SFX Sports Grp., Inc.*, 534 F. Supp. 2d 86, 90 (D.D.C. 2008). Specific jurisdiction requires only sufficient "'minimum contacts' with [the forum]," but requires that the plaintiff's claims arise from those contacts. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). General jurisdiction, on the other hand, "sets a high bar," requiring that the defendant have "continuous and systematic" contacts with the forum state—but then permits the forum to adjudicate any claims against the defendant, whether or not the claims are related to the defendant's actions in the

forum. *D'Onofrio*, 534 F. Supp. 2d at 90 (citation omitted). The Court considers the applicability

of each in turn.

## A.  Specific Jurisdiction

MBW argues that neither of its two acts arguably relating to D.C.—retaining lawyers at

Dickstein, a firm headquartered in D.C., and taking assignment of the Hettrick estate's claims

against Dickstein's insurers—should subject it to personal jurisdiction in D.C. *See, e.g.*, Reply

Mem. Supp. Def.'s Mot. Dismiss (Def.'s Reply), ECF No. 14 at 7–11. Brit does not seriously

contend that merely hiring Hettrick, a Dickstein attorney residing and working in California,

creates personal jurisdiction.[10] Instead, Brit hangs its hat on the argument that MBW accepted

---

[10] Any argument that retaining Hettrick alone satisfied the requirements of specific jurisdiction would be unsuccessful. The D.C. Circuit has previously found that merely hiring a law firm with a D.C. office falls beneath the threshold for minimum contacts. *See Thompson Hine, LLP v. Taieb*, 734 F.3d 1187 (D.C. Cir. 2013). In *Thompson Hine*, the court based its conclusion on: the short duration of the contract, the lack of a "choice-of-law provision" or "consent to suit in the District" in the retainer, the execution of the retainer outside the District, and the lack of any requirement in the retainer "that the firm perform work or receive payment in the District." *Id.* at 1192. MBW's contacts with D.C. here are even more remote. MBW's retainer agreement was negotiated in and mailed from California, and was with Clyde Hettrick, a lawyer located in California. Soura Decl. ¶ 9, ECF No. 7-1. In *Thompson Hine*, the work under the retainer actually ended up being performed by lawyers located in D.C., 734 F.3d at 1188–89, but here Brit does not dispute the Dickstein lawyers performed work only in California.

Brit's attempted reliance on *Xenophon* is misplaced. Pl.'s Opp'n at 12, ECF No. 13 ("This case is more analogous to *Xenonphon* [sic] . . ." In *Xenophon*, the court identified personal jurisdiction when the non-resident defendant hired a resident-corporation to perform D.C.-specific public relations tasks. *Xenophon Strategies, Inc. v. Jernigan Copeland & Anderson, PLLC*, No. 15-1774, 2016 WL 1367734, at *4–5 (D.D.C. Apr. 6, 2016). Brit does not argue here that the work Dickstein performed bore any relation to D.C. Instead, Brit's gloss is that the presence of a D.C. choice-of-law provision in *Xenophon* (and its absence in *Thompson Hine*) was the hinge on which personal jurisdiction turned. *See* Pl.'s Opp'n at 12. This Court disagrees. The *Xenophon* decision clearly holds that the choice-of-law provision is one small piece in the larger minimum contacts puzzle, and that the D.C.-specific nature of the contract services was more important in finding personal jurisdiction. *See generally Xenophon*, No. 15-1774, 2016 WL 1367734. Even if Brit's interpretation were correct, only Dickstein's insurance policy with Brit contained a D.C. choice-of-law provision, not the retainer agreement between MBW and Dickstein (indeed, that retainer agreement actually contained a California arbitration provision). *Compare* Primary Professional Liability Insurance Policy, ECF No. 1-1, Ex. A, *with* Soura Decl.

D.C. personal jurisdiction by taking assignment of the Hettrick estate's claims against Brit under the professional liability policy, which it argues was a "D.C. contract." *See, e.g.*, Pl.'s Mem. P. & A. Opp'n Def.'s Mot. Dismiss (Pl.'s Opp'n), ECF No. 13 at 9–13. Because the Court concludes that taking assignment of the contract does not meet the minimum contacts with the forum requirement of the due process clause, exercising specific jurisdiction over MBW is not warranted.

The District of Columbia's long-arm statute permits a court to "exercise personal jurisdiction over a person" when "a claim for relief aris[es] from the person's . . . transacting any business in the District of Columbia." D.C. Code § 13-423 (2012). This provision is interpreted "to provide jurisdiction to the full extent allowed by the Due Process Clause" such that "the statutory and constitutional jurisdictional questions . . . merge into a single inquiry: would exercising personal jurisdiction accord with the demands of due process?" *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013) (internal quotation marks and citation omitted).

Due process is satisfied if the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)), and that the defendant "should reasonably anticipate being haled into court" in the forum, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The court analyzes the "quality and nature of the defendant's activity" in the forum to determine if the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235,

---

¶ 9. The choice-of-law provision's relevance is thus highly circumscribed. Moreover, the Supreme Court has held that "such a [choice-of-law] provision standing alone [is] insufficient to confer jurisdiction." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985).

253 (1958)); *see also IMark Mktg. Servs., LLC v. Geoplast S.p.A.*, 753 F. Supp. 2d 141, 154 (D.D.C. 2010). In some cases, a single act may suffice to bring the defendant within the forum's personal jurisdiction, if the act is "neither irregular nor casual." *Int'l Shoe*, 326 U.S. at 319–20.

In *Burger King*, the Supreme Court rejected a "mechanical test" to establish personal jurisdiction over a non-resident defendant who entered into a contract with a resident. *Burger King*, 471 U.S. at 478. Although such a mechanical test is inappropriate, on some occasions entering into a contract may suffice to create personal jurisdiction—as it did in *Burger King* itself. "[T]he contract 'alone' could supply the necessary 'minimum contacts'" when the contract is so wide-reaching and exacting that its terms create a "'substantial connection' between the non-resident and the forum." *Thompson Hine*, 734 F.3d at 1193 (quoting *Burger King*, 471 U.S. at 475–76). To determine if the contract is one that creates such a substantial connection, the Court uses a "highly realistic" lens to analyze the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" and determines if the defendant "purposefully established minimum contacts within the forum." *Burger King*, 471 U.S. at 479 (citation omitted). The focus is on the actions of the defendant because "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Id.* at 474–75 (quoting *Hanson*, 357 U.S. at 253); *see also Helmer v. Doletskaya*, 393 F.3d 201, 205–06 (D.C. Cir. 2004) (finding that personal jurisdiction was proper over a defendant who entered into a contract in D.C. when that contract required sending monthly billing statements to D.C. and having bills paid from D.C. accounts).

Contrary to Brit's apparent position, the analysis of the defendant's contacts with the forum state is required when the defendant is the assignee of a contract. Brit appears to argue that

if the initial contract was sufficiently connected to D.C.,[11] then any assignee would automatically step into the shoes of the assignor and "submit[] to a D.C. court's jurisdiction under the D.C. long-arm statute." *See* Pl.'s Opp'n, ECF No. 13 at 10. The Court finds that this standard is not supported by the law of this circuit or in harmony with the teachings of *Burger King*. Neither of the two cases Brit cites, *Johnson* and *Farouki*, applied a mechanical rule to chain the personal jurisdiction of the assignee to that of the assignor. Instead, both courts performed the standard analysis, guided by *Burger King*, to determine if the *assignee's* contacts with the forum state were sufficient to indicate that the *assignee* purposefully availed itself of the forum state.

For example, in *Johnson* the court held that specific jurisdiction was proper over a defendant who took assignment of a mortgage on D.C. property and thereafter received a stream of income from D.C.[12] *Johnson v. Long Beach Mortg. Loan Trust 2001-4*, 451 F. Supp. 2d 16, 31

---

[11] Brit does not specify the precise degree of connection between the contract and the District required for a contract to be, in its terms, a "D.C. contract," which would allow a District of Columbia court to exercise personal jurisdiction over the parties (and their assignees). Because the Court does not accept Brit's position, it does not explore the contours of such a "D.C. contract." However, the argument that the original contract here was such a "D.C. contract" would not be as straightforward as Brit suggests.

Brit discusses negotiations for Dickstein's insurance policy—which involved email and phone communication with the District—and that the executed policy was sent to the District by email. *See* Pl.'s Opp'n at 10, ECF No. 13. But, these contacts are not very helpful in establishing personal jurisdiction. *See Katopothis v. Windsor-Mount Joy Mut. Ins. Co.*, No. 14-380, 2016 WL 5374081, at *16 (D.D.C. Sept. 26, 2016) ("[E]mail and telephone communications sent into the District of Columbia are not sufficient to [confer personal jurisdiction] in themselves, even if they are made pursuant to an underlying contract between a resident [plaintiff] and a nonresident [d]efendant . . . . After all, such communications are incidental to nearly every business relationship; they are not indicative of any desire to do business in D.C. and do not suffice to show purposeful availment or minimum contacts." (internal quotation marks and citations omitted)); *Dove v. United States*, No. 86-0065, 1987 WL 18739, at *3 (D.D.C. Oct. 9, 1987) (holding that "the mere delivery of documents . . . . does not confer jurisdiction").

[12] Furthermore, the court in *Johnson* identified an alternative basis of personal jurisdiction against the defendant under D.C. Code § 13-423(a)(5) because the defendant had a security interest in D.C. property. *Johnson*, 451 F. Supp. 2d at 30. No such alternative basis of specific jurisdiction applies here.

(D.D.C. 2006). The court in *Johnson* repeatedly emphasized the continuing contacts of the assignee with D.C.—specifically, that the assignee contemplated and received continual mortgage payments from D.C. based on its ownership interest in real property in D.C. *Id.* at 30. When the court stated that "[t]aking assignment *of a mortgage note* is neither an 'irregular nor casual' act" it did so in the context of the continual income stream and other D.C. connections that flow from a mortgage note. *Id.* at 31 (quoting *Int'l Shoe*, 326 U.S. at 320); *see also Farouki v. Petra Int'l Banking Corp.*, 811 F. Supp. 2d 388, 399 (D.D.C. 2011) (finding that the court had personal jurisdiction over a bank which took assignment of a loan when the assignment occurred in D.C. and the assignment involved a claim to D.C. property), *vacated in other part*, 705 F.3d 515 (D.C. Cir. 2013). This analysis tracks the Supreme Court's admonition in *Burger King* to take a "highly realistic" approach to the contacts contemplated by the contract.

*Johnson* drew heavily on the Supreme Court's analysis in *McGee*, which is also helpful here. 451 F. Supp. 2d at 31–33. In *McGee*, the Supreme Court permitted a forum to exercise personal jurisdiction over a defendant when the "suit was based on a contract which had substantial connection with that State." *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957). The contract at issue was actually the assignment of a prior life insurance policy to a new insurer. *Id.* at 221–22. The Court held that the assignee had a substantial connection to the forum state because the new contract was "delivered in [the forum state], the premiums were mailed from there and the insured was a resident of that State when he died." *Id.* at 223. As in *Johnson* and *Farouki*, this analysis thus focused on the contacts of the *assignee* to the forum state. If the rule were as Brit suggests, the Court would have had no cause to address the assignee's contacts with the forum and could have concluded its analysis after determining that the assignor was subject to personal jurisdiction.

From *McGee*, *Johnson*, and *Farouki*, this Court concludes that the applicable test for exercising personal jurisdiction over a non-resident assignee, when the assignee's purported connection to the forum state stems from the assignment, is whether the *assignee's* contacts with the forum state are sufficient to satisfy the minimum contacts requirement of the due process clause. In other words, the *assignee* must "purposefully establish[] minimum contacts with the forum," as determined through a "highly realistic" analysis that considers the assignee's "prior negotiations and contemplated future consequences, along with the terms of the [assignment] and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479. If the assignee has taken an interest in real property in the district, or if the assignment was executed in the district, or if the assignee receives an income stream from the district, or other similar connections to the forum are present, then exercising personal jurisdiction over the assignee may be appropriate.[13] Although the D.C. Circuit has not provided guidance on this issue, this conclusion is in accord with that in other circuits. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 784 (7th Cir. 2003) (holding that "an assignee does not step automatically into the shoes of the assignor for purposes of personal jurisdiction" and collecting cases). The Court thus turns to the connections between the assignment and the forum in this case.

Brit argues that MBW's contacts with D.C. resulting from the assignment of the claims against Brit suffice to create specific jurisdiction over MBW. However, there are virtually no contacts tying the assignment to the District. Brit does not argue that the assignment was

---

[13] This analysis is in harmony with *Johnson*'s statement that "an assignee of a contract created and to be performed in a particular forum *may* be subject to the jurisdiction of the forum's courts, even if the assignee has no other relevant contacts with the forum." *Johnson*, 451 F. Supp. 2d at 31 (D.D.C. 2006) (emphasis added) (citing *McGee*, 355 U.S. 220). As *Burger King* established, a non-resident entering into any type of contract, assignment or not, may or may not be subject to personal jurisdiction depending on the connection between the contract and the forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985).

negotiated or executed in the District,[14] unlike the assignment at issue in *Farouki*. By taking

assignment, MBW had no reason to anticipate receiving any revenue from D.C., much less a

continuous stream—indeed, MBW's hoped-for reward would likely be collected from Brit, a

London insurer, and, as MBW notes, it took assignment only of the "right to collect on a loss that

had already occurred" rather than any ongoing "insurable risk" that might require "continuing

performance," *see* Def.'s Reply at 9, ECF No. 14. This is in stark contrast to the assignments

found to satisfy the requirements of personal jurisdiction in *McGee*, where the assignee received

continuing premium payments from the forum, 355 U.S. at 223, and *Johnson*, where the assignee

received monthly mortgage payments from D.C., 451 F. Supp. 2d at 31.[15] Nor did MBW gain

any interest in D.C. property through the assignment, unlike in *Johnson*, 451 F. Supp. at 31, and

*Farouki*, 811 F. Supp. 2d 399.

---

[14] Because the proper focus is on the assignee's contacts, Brit's arguments that Dickstein's professional liability insurance policy may have been negotiated or executed in the District, *see* Pl.'s Opp'n at 10, ECF No. 13, are not persuasive. Had the place of execution of the original contract been a dispositive factor, the analysis in *McGee*, *Johnson*, and *Farouki* would have been much simpler.

Similarly, Brit's reliance upon the choice-of-law provision in the professional liability policy, *see* Pl.'s Opp'n at 9, is unavailing. The provision does not select D.C. as the forum for future litigation. Because courts in other jurisdictions are competent to apply D.C. law, the choice-of-law provision does not establish that either party would be haled into court in the District. In addition, the provision appears in the contract between Dickstein, not a party here, and Brit—not MBW. Furthermore, *Burger King* is clear that "such a provision standing alone [is] insufficient to confer jurisdiction." 471 U.S. at 482.

[15] The facts here also differ from those in the cases cited by Brit because here it was the party with the greater connection to the forum state that served as the assignor. *See Johnson v. Long Beach Mortg. Loan Trust 2001-4*, 451 F. Supp. 2d 16, 25–27 (D.D.C. 2006) (plaintiff who continued to pay mortgage payments to assignee was a D.C. resident); *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 220 (1957) (decedent who continued to pay insurance premiums to assignee resided in the forum state). Thus, in this case neither interested party after the assignment had a substantial connection to D.C.

In sum, the court does not find any "prior negotiations," "contemplated future consequences" or "terms of the [assignment] and the parties' actual course of dealing" that suggest that MBW "purposefully established minimum contacts" with D.C. by taking assignment of the Hettrick estate's claims against Brit under the professional liability policy.[16] *See Burger King*, 471 U.S. at 479. In applying *Burger King's* "realistic" lens, the Court sees no reason that MBW would have expected to be haled into court in the District based on taking assignment of claims against a London insurer. This conclusion is in line with others in this circuit in the general contract context. *See Fasolyak v. The Cradle Soc'y, Inc.*, No. 06-01126, 2007 WL 2071644, at *6 (D.D.C. July 19, 2007) (finding that arguments in favor of personal jurisdiction "lose their force when, as is the case here, both parties to the dispute are nonresidents, the contract contemplates no performance in the District of Columbia, and the defendant engaged in no act directed at District citizens or acted pursuant to a contract that anticipated future consequences here"). Because MBW's purposeful actions directed at the forum state do not pass the due process threshold of minimum contacts, the Court concludes that exercising specific jurisdiction over MBW is not appropriate here.[17]

---

[16] Indeed, the Settlement Agreement specified California law for any disputes between MBW and the estate. Settlement Agreement ¶ 22, ECF No. 1-4, Ex. D.

[17] The Court notes that, if SFA were the proper defendant, it would likely also not be subject to this Court's specific jurisdiction. Under the facts as alleged, SFA, like MBW, is only connected to D.C. by taking assignment of the claims against Brit. SFA's connection is even more attenuated than MBW's because SFA took assignment of the legal claims from MBW rather than directly from the Hettrick estate. *See* Soura Decl. ¶ 18, ECF No. 7-1 ("On January 1, 2016, MBW transferred its rights in the settlement agreement and the judgment to SFA Group, LLC."); *see also* Assignment of Rights and Acknowledgement of Assignment, ECF No. 7-1, Ex. C.

**B.  General Jurisdiction**

Brit argues that MBW is subject to general jurisdiction in D.C. because it "promoted and sold its products through retailers in D.C."[18] Pl.'s Opp'n at 14, ECF No. 13. MBW argues that its contacts are insufficient to meet the "exceptional" standard warranting general jurisdiction in a forum that is not the defendant's place of incorporation or principal place of business. *See* Def.'s Mot. Dismiss at 11–14, ECF No. 7; Def.'s Reply at 4–7, ECF No. 14. The Court concludes that, even if MBW undertakes activities in D.C. as Brit alleges, it is not "essentially at home" in the District and thus general jurisdiction is not appropriate.

D.C. law provides for general jurisdiction over "foreign corporation[s] doing business in the District" under D.C. Code § 13-334(a) (2012). *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 n.1 (D.C. Cir. 2002). That jurisdiction is "coextensive with the reach of constitutional due process."[19] *Freedman v. Suntrust Banks, Inc.*, 139 F. Supp. 3d 271, 278 (D.D.C. 2015) (quoting *Gorman*, 293 F.3d at 510). The Supreme Court has recently spoken to the extent of permissible general jurisdiction: "A court may assert general jurisdiction over

---

[18] In its reply brief, MBW argues that the activities Brit cites are actually performed by MBW Inc., a separate corporate entity that now handles all manufacturing and sales. *See, e.g.*, Def.'s Reply at 6, ECF No. 14 ("Brit conflates MBW LLC (the defendant herein) with MBW Inc., and argues as if the two separate entities are synonymous. They are not. MBW LLC ceased all manufacturing and distribution operations in 2010, but continued to exist to pursue the insurance claim . . . . Meanwhile, MBW Inc. has been the operating entity responsible for manufacturing and distributing swimwear for nearly six years."). According to MBW, the defendant-entity "presently has no contacts with the District whatsoever." Def.'s Mot. Dismiss at 13, ECF No. 7. The Court does not resolve these issues of corporate structure because, even if the activities in question were attributable to the defendant, they would not satisfy the high bar required for exercising general jurisdiction over MBW.

[19] A separate barrier exists here barring Brit from benefiting from the D.C. Code's grant of general jurisdiction—D.C. law requires "that personal service be made within the District of Columbia." *Everett v. Nissan Motor Corp.*, 628 A.2d 106, 108 (D.C. 1993) (citing D.C. Code § 13–334(a) (2012)). It appears that service in this case was effected in California. *See* Affidavit of Service, ECF No. 5 (noting that MBW was served through its CEO in Sacramento, California).

foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317). Corporate defendants are paradigmatically "at home" at either their place of incorporation or principal place of business. *Daimler AG v. Bauman*, 134 S. Ct. 746, 749 (2014).

A corporation is not "essentially at home" merely because it uses the stream of commerce to deliver products to the forum state. *See Goodyear*, 564 U.S. at 927 ("Flow of a manufacturer's products into the forum, we have explained, may bolster an affiliation germane to specific jurisdiction . . . [but] do[es] not warrant a determination that, based on those ties, the forum has general jurisdiction over a defendant."). Indeed, it would be "unacceptably grasping" to exercise "general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business." *Daimler*, 134 S. Ct. at 761 (internal quotation marks omitted). In *Daimler*, the Supreme Court held that general jurisdiction was not proper over the defendant in California, even though the defendant was substantially involved in commerce there: it had three offices with employees and was the largest seller of luxury vehicles in the state. *Id.* at 752. The Supreme Court concluded that:

> If [the defendant's] California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which [the defendant's] sales are sizable. Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."

*Id.* at 761–62 (quoting *Burger King*, 471 U.S. at 472)).

Although *Daimler* and *Goodyear* set a high bar for asserting general jurisdiction over foreign entities, the Supreme Court left open the possibility that "in an exceptional case, a

corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 761 n.19. With these principles in mind, the Court considers whether exercising general jurisdiction over MBW is proper here.

This is clearly not the prototypical case of general jurisdiction because it is undisputed that MBW is not incorporated in D.C. and does not have its principal place of business in D.C. *See Soura* Decl. ¶¶ 3–4, ECF No. 7-1 (stating that "MBW is a Delaware limited liability company" with members that are residents of Delaware, Nevada, California, and Florida and that the principal place of business during manufacturing was California); *see also* Def.'s Mot. Dismiss at 1, 12–13, ECF No. 7 ("MBW never manufactured any products in the District, never sold or delivered any merchandise in this District, never maintained an office in this District, never had employees in the District . . ."); Def.'s Reply at 4, ECF No. 14. Instead, Brit focuses its argument on the activities that MBW does perform within the District. These activities are largely those which a major nationwide manufacturer would be expected to undertake in every state. Brit claims that MBW "purposefully introduces its products into D.C. and benefits by selling its products within D.C." through "retailers and merchants." Pl.'s Opp'n at 14–15, ECF No. 13. Brit also claims that MBW "markets its clothing products through various brand names that are advertised and sold to District of Columbia residents," including in magazines that are available in the District such as "People Magazine, Allure, Glamour, and Fitness Magazine." Pl.'s Opp'n at 14–15. Accepting each of these allegations as true, MBW is far less involved in D.C. than the *Daimler* defendant was in California. Unlike the defendant in *Daimler*, MBW does not have any physical offices or employees in the District, and there is no evidence in the record as to its size of the market share in the district. *Compare* Soura Decl. ¶ 6, ECF No. 7-1 ("[MBW]

was never registered to do business in the District and never had an agent for service of process

there. It never had a customer in the District, never manufactured merchandise in the District,

never sold directly or shipped products to the District, and never had any employees in the

District."), *with Daimler*, 134 S. Ct. at 752.

This conclusion is buttressed by other decisions from this jurisdiction. In *Freedman v.

Suntrust Banks, Inc.*, the court rejected general jurisdiction over a defendant who "operate[d]

numerous retail branches and ATMs, and maintain[ed] a significant 'brick-and-mortar'

presence" in D.C. because *Daimler* "explicitly foreclose[d]" subjecting such a defendant to

general jurisdiction in each of multiple "primary bases of operation." 139 F. Supp. 3d 271, 279

(D.D.C. 2015). Brit's comparison of this case to *Marshall v. I-Flow LLC*, 856 F. Supp. 2d 104

(D.D.C. 2012), is unpersuasive for several reasons. Pl.'s Opp'n at 14, ECF No. 13. First,

*Marshall* was decided before the Supreme Court's further clarification of the standard for

general jurisdiction in *Daimler*. Second, MBW's alleged activities within the district are far short

of the activities undertaken in *Marshall*, which include the defendant "establish[ing] and

benefit[ing] from a partnership with the George Washington University Hospital, devot[ing] an

entire [sales] region to sales in Washington, D.C." and using "expert medical consulting services

of prominent Washington, D.C. medical facilities and physicians." *Marshall*, 856 F. Supp. 2d at

108 (internal quotation marks and citations omitted). Brit nowhere claims that MBW engaged in

a "partnership" with a D.C. entity or performed any acts that would similarly render it

"essentially at home" in the District. The Court thus concludes that exercising general

jurisdiction over MBW is not appropriate.[20]

---

[20] The Court notes that it would likely reach the same conclusion as to the exercise of
general jurisdiction over SFA. Like MBW, SFA Group is not incorporated in D.C. and does not
have its principal place of business in D.C. Soura Decl. ¶ 19, ECF No. 7-1. It is not disputed that

## C. Jurisdictional Discovery

Brit requests that, should the Court be unconvinced of its jurisdiction over MBW, the Court should grant Brit jurisdictional discovery. Because the Court agrees with MBW that such discovery is unwarranted, it denies Brit's request.

Jurisdictional discovery is appropriate "if a party demonstrates that it can supplement its jurisdictional allegations through discovery." *GTE New Media Servs. Inc.*, 199 F.3d at 1351. A plaintiff seeking jurisdictional discovery must provide "specific discoverable facts," *Cheyenne Arapaho Tribes of Okla. v. United State*s, 558 F.3d 592, 596 (D.C. Cir. 2009), rather than "mere conjecture or speculation" that discovery could lead to personal jurisdiction, *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1094 (D.C. Cir. 2008).

In this case, Brit argues that jurisdictional discovery might reveal that MBW undertook "a specific marketing campaign for the D.C. region," and that such a campaign might include "working with D.C. retailers, targeting advertising in the D.C. area, and employees who are responsible for sales in D.C." Pl.'s Opp'n at 43, ECF No. 13. According to Brit, these facts, if established, would provide for the general jurisdiction of this Court over MBW. Pl.'s Opp'n at 42–43 (citing *Marshall*, 856 F. Supp. 2d at 108).[21]

Even if jurisdictional discovery established the facts that Brit alleges, this Court would still conclude that exercising general jurisdiction over MBW would not be appropriate. In

---

SFA has not "conducted any business in Washington D.C. [sic]." Soura Decl. ¶ 20. General jurisdiction over SFA would thus also be inappropriate as it is not "essentially at home" in the District. *See also* Def.'s Mot. Dismiss at 14, ECF No. 7 ("SFA does not conduct and has never conducted any business in the District of Columbia, and does not have any employees here. It is not registered to do business in the District and it does not have an office or an agent for service of process here. None of its members reside in the District. SFA has no contacts with the District and therefore it cannot be subject to general personal jurisdiction here." (citations omitted)).

[21] Brit does not argue that jurisdictional discovery could establish specific jurisdiction over MBW, and the Court does not address this possibility.

*Daimler*, the Supreme Court held that a defendant was not subject to general jurisdiction despite having offices and employees in the forum state, and specifically targeting sales of the defendant's products to retailers in the forum state. *Daimler AG v. Bauman*, 134 S. Ct. 746, 752 (2014). Brit's claimed contacts here are less broad in scope than the contacts that existed in *Daimler*, and general jurisdiction would thus remain improper. Even if MBW did "work[] with D.C. retailers," or "target[] advertising in the D.C. area," or have "employees who are responsible for sales in D.C.," Pl.'s Opp'n at 43, these contacts would not be sufficient to show that MBW was "essentially at home" in the District, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Thus, because Brit has not demonstrated that "discovery will enable it to show that the court has personal jurisdiction over the defendant," the Court denies Brit's request for jurisdictional discovery as futile. *FC Inv. Grp.*, 529 F.3d at 1093–94; *see also Simon v. Republic of Hungary*, 37 F. Supp. 3d 381, 394 (D.D.C. 2014) (denying jurisdictional discovery to show general jurisdiction when it would be futile), *appealed in other part*, 812 F.3d 127 (D.C. Cir. 2016).

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (ECF No. 7) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: January 26, 2017                                                     RUDOLPH CONTRERAS
                                                                            United States District Judge